The next case this morning is 522-0300 Thornton et al. v. Illinois Department of Corrections et al. Arguing for the appellant is Tom DeVore. Arguing for the appellee is Carson Griffiths. Each side will have 15 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Counsel for the appellant, please state your name and you may proceed. Thank you, Justice. This is Tom DeVore on behalf of the appellants. Justices, we're here today and I need to make sure that I frame what is actually in front of you because not only has the state framed the question the wrong way, they actually, in a case that my clients weren't involved in, in the Glass case which you've read, the appellate court there also framed the issue the wrong way. This is not my client seeking this court to review the administrative decision of interest arbitration award. We are not asking this court to review that. What we are asking this court to do is to consider that irrespective of that, that my clients have a right to come forth to the court to seek enforcement of their statutory rights under the Department of Public Health Act. That does not mean that they win that argument with this court or the trial court, but whether or not the arbitration award precludes them from being able to seek enforcement of their statutory rights. That is the question that's being asked for this court and regardless of how this court rules, that's again what my clients are positioning to you, not administrative review of that award. If you look at the face of our complaint, the face of our complaint is seeking enforcement of their statutory rights regarding vaccination and testing under the Department of Public Health Act and again that the arbitration award was not preclusive. Mr. DeVore, wasn't this vaccine mandate rescinded in January of this year? The vaccine mandate, eventually the governor did in fact, or I'm sorry, the Department of Corrections did rescind it and there's actually a recent ruling, sir, out of the Illinois Labor Relations Board that was adverse to the state as well that asked me as a party. But why is this not moved before us now? Because I have clients that as a result of this policy that we're arguing violated their state rights that were damaged because they lost their jobs and they were put on leave, etc. So should this court find that the Department of Public Health Act was in fact violated, if we get that far justice, then they could have a supplemental action for damages that would survive regardless of the fact that there's no longer a mandate. Thank you. Yes, so the state court cases that we have cited and then also actually the one of the federal cases that my colleague cited, I'm asking the court to consider and what the court's going to find is where this comes down to on the issue of whether or not my clients are precluded, of whether or not they have through the collective bargaining agreement given up their statutory rights, they've waived those rights as a part of the negotiation process. Our state court cases and the U.S. Supreme Court cases all stand for the same proposition that there has to be a negotiated waiver of those rights before the jurisdiction of the labor law would allow them to enter an arbitration decision that impacts those statutory rights. If we start with the Hayes case that was cited for the court, it talks about a two-step process for our courts. The first thing is, is the claim being raised in this court, is it based on contract or is it based on statute? This is based on statute. It's not based upon the nowhere on the face of the complaint. Do we ask this court to overturn an arbitration award or to enforce any contract rights under the collective bargaining agreement? The next step says is that if in fact it's under statute, how heavily does the court have to rely upon the interpretation and the language of the collective bargaining agreement? More specifically, what statutory right or constitutional right was violated? 20 ILCS 2305, sir, subparts D and subparts E. The Illinois Department of Public Health Act requires that before a citizen, when the goal is, sir, to limit the spread of an infectious disease because it's a public health issue, when that is the goal, then the Department of Public Health Act is the supreme authority because the Illinois Department of Public Health has been delegated that by the legislature. And what it says is very straightforward, that if there is a desire to require someone to be vaccinated and or tested, it's two separate independent provisions, that you have to seek the consent of that citizen. And if they don't consent, sir, then they have to go to court and get an order of quarantine or isolation saying this person needs to be restricted from the public. That is the power of the Illinois Department of Public Health. Now, the question is going to become for this court of, well, is this a workplace issue or is this a public health issue? I'll get to that in a second. But again, those rights under the Department of Public Health Act are individual to every citizen. It's a statutory right. And so now what we have practically is we had Governor Pritzker issue a mandate and then we had these employers. It's important that it's a public employer proclaiming that they're going to implement that mandate and that they're going to negotiate. The governor even said in the executive order subject to negotiation. Well, there was no negotiation. It got to an impasse and again, this court can read the newly penned Illinois Labor Relations Board decision if it chooses. And then it went to interest arbitration and the court has the interest arbitration award where the arbitrator wasn't so sure about their jurisdiction, which was fine. But ultimately what they did, gentlemen, is they issued an arbitration award that was really tantamount to a waiver of the statutory rights is what my client is saying. And if this court looks to the Skokie decision that's been cited by, I know the defendant cited it for certain, in the Skokie decision, your honor, they talk about what really had happened there is that the arbitrator, even though it was not in the agreement that this statutory right was subject to arbitration, is the arbitrator issued a decision that said that your statutory rights, and in this case it was the promotion act that they were dealing with, the arbitrator couldn't waive that right through arbitration. It did say, because the facts were such, that they had negotiated a waiver of that right in prior contracts, but this year they couldn't get it done and the arbitrator issued an order that said, no, you're going to continue with those provisions of the old contracts. The appellate court overturned and said, look, you can negotiate in your collective bargaining agreement a waiver of statutory rights, but you cannot, through arbitration, force a waiver of statutory rights, unless the agreement says that you can. It's beyond the purview of the labor board. That's what the state law says, that the cases have been cited if the court reads them, is that it all depends upon what the contract says. And if you look at the arbitrator's award, justices, they clearly proclaim that this is not based upon the contract. It was interest arbitration. And interest arbitration deals with disputes about what should be a part of the collective bargaining agreement, not that there is a grievance arbitration to where they're arguing about specific provisions. So the arbitration award itself stands for the proposition that none of this vaccination testing information, it was not in the collective bargaining agreement anywhere. And then they talk about managerial rights and whether an employer has the ability to do that. But keep in mind, that has to do with contractual negotiations and contract decisions. It's not about statutory rights. I want to jump briefly to the federal case that my colleague cites. It's the Penn Plaza case. And in the Penn Plaza case, they do a really good job of distinguishing what's known as the Gardner-Denver. It was a seminal case of the federal court and then Barentine and its progeny. And what the court really did here is said that the reason that that line of cases, that's still good law today, allows for a citizen to go to court and ask for a declaratory judgment on its statutory rights being violated is because in those federal cases, the collective bargaining agreement did not give up those rights. And in the Penn case, it specifically says is that in that case, there was a provision in the collective bargaining agreement that allowed them to negotiate these statutory rights. That's where it hinges in the state court cases and the federal cases of whether or not the bargaining agreement has given up those and it said it quite clearly. We also have the issue of, okay, well, is this a workplace safety issue or is it a public health issue? Because if you get past the fact that this court has jurisdiction, which I clearly believe it does, then you're being asked, well, did this policy violate the rights of these citizens, their rights to not be subjected to vaccination and testing? They'll cite to you the Allen case, which the Allen case was up on a request for a restraining order. It wasn't argued orally with the fourth appellate district. It was a case that I was counsel in. And with all due respect to the court, I mean, when they were in the middle of the pandemic was at the top of everybody's mind when this was argued. But what they really said there conclusively, they really didn't analyze it, is that, oh, this is not a public health issue for which the public health act applies. It's an employment related issue. It's a workplace safety rule. And in the last paragraph of the Allen case, they talk about the defendant in that case, which was also a public employer, is not trying to invoke the broad powers of the health department and that they've merely adopted workplace safety rules for the protection of the employees. The court did agree with my client that the public body was not the protector of public health, but nothing in their policy restricts the plaintiff's activities, movements, or interactions outside the workplace. And for that reason, the Allens, they said, well, it's not public health issue, it's workplace safety. I'm sorry, I disagree with that analysis. It was very brief. Requiring someone to be vaccinated or tested does exceed the workplace. It's a public health issue. And I would ask the court to review the U.S. Supreme Court case we cited, the National Foundation or Federation of Individual Businesses, where the United States Supreme Court took this exact issue up and unequivocally said that these types of mandates, these exact types of mandates were not workplace safety, they're public health issues. Just because you can potentially contract an infectious disease at work, you can contract it anywhere. We all knew that, we all lived it. So again, the Allen decision, which again, Judge Brandemeier had to follow all of these decisions, I understand that. But the Allen case, they got it wrong. And I'm asking this court to review it under the lens of this is not workplace safety requiring vaccines and again, testing for the public health crisis. That's the difference. This vaccine and testing was not unique to the workplaces. The U.S. Supreme Court touched on that briefly. This was to try to stifle a public pandemic and I'm not making light of it in any fashion. What I'm suggesting is that this public employer was implementing public policy based on an executive order from the governor in violation of the Department of Public Health Act, which says again, the person can consent to the vaccination or testing and if they don't consent after they get due process of law in front of a court, they could be quarantined or isolated, not fired from their job. So that's what was going on, gentlemen. We're asking this court to find based upon the clear lineage of state and federal cases that you do have jurisdiction to hear my client's statutory claim because it was not waived in any collective bargaining agreement. They didn't agree by contract specifically to negotiate these types of issues or to arbitrate these types of issues. So this court has jurisdiction under the Barentine and the Gardner Denver cases in the federal courts. You can hear this claim. Hearing the claim, the question is, is it workplace safety or is it public health? If this court finds that this was in fact a workplace safety for the employer, then you probably would fall in line with the Allen reasoning going that an employer can do that. I would ask the court not to do that because again, this is a public employer. They are delegated authority from the legislature, from the people and nowhere have they ever been given any delegation in the Department of Corrections to manage public health crises like an infectious disease. They don't have any authority for that whatsoever. It was delegated to the Supreme Authority, the Illinois Department of Public Health. So we're asking this court to find that jurisdiction lies, that the Department of Public Health Act controls vaccination and testing when it's dealing with the spread of an infectious disease, and that my clients had rights under the Department of Public Health Act that were not followed and given to my clients. Thank you very much. Justices Vaughn and Welch, any questions? No questions. I guess a brief follow-up question. You said that the statute you're relying on is 20 ILCS 2305 subsections D and E, but that statute says IDPH can authorize vaccine mandates. That's not what happened here. The Department of Corrections and the governor issued a vaccine mandate. Am I misunderstanding that? No, partly, sir. What the statute says, Justice, is that they can require, through their process, to get somebody to vaccinate or test. But what's important to understand is that if you read sections D and E real close, it says that if the citizen refuses, they have a liberty interest right to refuse. And if they refuse that vaccination or refuse that isolation or quarantine that person, as long as the public health department sees it necessary to protect the people. So not even the supreme authority of the land, let me back up, not even the Department of Health can force a vaccination. You know who can force vaccinations on people, sir? The Illinois legislature. Through Jacobson v. Massachusetts on down, our legislature can force vaccination of our people, and I'm okay with that. The Department of Public Health cannot force it. They can merely quarantine or isolate you if you refuse as a citizen. Thank you. Thank you, counsel. Yes, sir. Counsel for the appellee, Mr. Griffiths, you may proceed. Your honor, may it please the court. Assistant Attorney General Carson Griffiths on behalf of the Illinois Department of Corrections. I'd first like to address Justice Vaughn's question about developments in this case since it has been briefed. As Justice Vaughn pointed out, the state through CMS did suspend the enforcement of the vaccination or testing requirement as of January, so it's not currently being enforced. The state also reserved the right to reinstate the requirement should cases rise or scientific evidence dictate otherwise. But to the extent that plaintiffs and they've tried to do that here are disclaiming any challenge to the interest arbitration award and are challenging something else, I'm not sure what that would be, but the only thing that's in effect right now is the arbitration award. And so that challenge doesn't present a case or controversy to this court if they're not challenging the arbitration award. So then turning to that question and the question of subject matter because I agree with counsel that framing this complaint in the correct way is important. So taking a step back, the governor issued an executive order directing the agencies to negotiate with public sector unions over a vaccination or testing requirement, CMS, and AFSCME did that. They negotiated. They could not come to an agreement. AFSCME demanded interest arbitration. The parties went into arbitration. The arbitration panel held expressly the state had the lawful authority to implement this requirement and then issued an order, an award, requiring the state to implement it. So again, the only thing we have requiring these employees to vaccinate or test is an arbitration panel's award. And then turning to plaintiffs. I understood Mr. DeVore's argument correctly and I'm not sure I did, but if I did, it's one thing to submit to interest arbitration wages or overtime or things like that. It's a whole other thing to say you have to be vaccinated. That's not something that could be interest arbitrated if I understand him correctly. That's something the individual employee has a right to challenge or consent to. No, your honor, I disagree because if you look at how we outlined it in our brief, there are issues outside of the mandatory subjects of interest arbitration that are called permissive subjects of arbitration. And those are things that generally the panel couldn't consider. One of those being an individual statutory right. But importantly, under the case law interpreting the Labor Relations Act, parties can agree to submit a permissive subject to labor to interest arbitration. And ultimately, should the arbitration panel have not considered an issue that was before it, that's a claim that the arbitration panel exceeded its authority. And Section 14 of the Labor Relations Act expressly states that an arbitration award may be challenged on that basis, but it can only be done so by a public employer or the exclusive bargaining representative for the employees. And that's exactly what the Glass v. Illinois Department of Corrections case recognizes. These are individual IDOC employees trying to seek personal exemptions from an arbitration award. So are you saying the AFSCME had to do it or whatever union representative employee has to do it, the employee cannot do it individually? The only challenge the employee could have brought here would have been an unfair labor practice charge against AFSCME for a charge alleging that they violated their duty of fair representation. And the basis of that would have been, you gave away my alleged IDPH Act rights unfairly, you shouldn't have done that. But a direct challenge to the arbitration award could only be brought by the union or the employer. And that's consistent throughout labor law. As we cited in our brief, the Stuhulak case by the Illinois Supreme Court recognizes that in the context of grievance arbitration. Because the purpose behind that really is to ensure that both parties to arbitration, the employer, the union, they can be assured that that award is final, and they can rely on it, and that the other employees who maybe do want that requirement to be in place can also rely on it. Individuals shouldn't be running into court and trying to undermine an arbitration award and seek personal exemptions from it after it's been bargained and gone through the arbitration process. So then turning really to plaintiff's complaint here to contextualize this. Count one of the complaint asks for a declaratory judgment declaring that defendants had no lawful authority to impose this requirement. That's directly contradictory to the terms of the arbitration panel's award saying that they do in fact have that lawful authority. Count two asks for a declaratory judgment that essentially says our IDPH Act rights supersede the arbitration award. The arbitration award has no effect on that. I'm not sure how to characterize that other than a challenge that the arbitration, a challenge directly to the arbitration award. It's worded carefully to avoid the Labor Arbitrations Act, but as the Illinois Supreme Court has made clear, careful pleading or creative pleading is not sufficient to avoid the Labor Relations Act and the exclusive jurisdiction of the board. Also, I would note that the footnote at page C-15 of the record in plaintiff's complaint expressly alleges that the arbitration panel exceeded its authority, which again is a challenge that could only be brought by AFSCME or the state under the terms of section 14. And then count three of the complaint, the final count, asks for a permanent injunction prohibiting the enforcement of the vaccination or testing requirement. Again, the vaccination or testing requirement exists just because of this arbitration award. So what plaintiffs are asking for is an injunction prohibiting the state from enforcing it. So for all those reasons, despite what Mr. DeVore says here today, this is a challenge to an interest arbitration award. It should have been should have pursued an unfair labor practice charge against their union if, as Mr. DeVore suggests, AFSCME improperly waived some statutory rights under the IDPH Act. I'd also like to emphasize that the Skokie case that Mr. DeVore discussed doesn't suggest that any sort of like submit permissive subjects of bargaining to interest arbitration. The key difference was that in Skokie, the Skokie firefighters case, the union objected to the arbitrator's consideration of the issue at interest arbitration. It said, don't consider the Promotion Act. We have a right under the Promotion Act. We're preserving that right. And then the arbitrator said, no, I'm considering it it went to an final award. And then actually the state in that case was found to have committed an unfair labor practice by insisting that the permissive subject be considered by the arbitration panel despite the union's objection. So applying those facts to this case, say the interest arbitration panel was convened. The parties went before it and AFSCME said, I'm sorry, but our client, our membership has individual rights under the IDPH Act, and the panel can't consider it. And then the panel said, no, we're going to consider it. And we went through the process. And ultimately a court in a challenge to the arbitration award or something else said that was a permissive subject of bargaining. It never should have been for the arbitration panel. The state could have been charged with an unfair labor practice claim. That's not what happened here. Again, both parties acceded to the arbitration panel's authority to consider this issue. And then the arbitration panel came out with an award. There were no challenges to that award by AFSCME. And it's been in effect since then. So for all those reasons, plaintiffs attempts to sidestep the Labor Relations Act really aren't persuasive here. Um, I would also like to note, I'm not exactly sure what, uh, new Labor Relations Board decision Mr. DeVore is referring to. Um, I know there was a recent decision about the city of Chicago's vaccination requirement, but in that case, um, and any decision by the board, uh, finding that the state committed some sort of wrongdoing would only confirm that the board is the proper venue for a challenge like this, not circuit court. So, so whatever that decision is, it only suggests further that there was no subject matter jurisdiction here. Um, so with my remaining time, I'd like to address the merits of the claim brought here under the IDPH Act, should this court determined that there was subject matter jurisdiction. Um, the IDPH Act gives that agency broad powers and the authority to compel members of the public to either be vaccinated or tested for infectious diseases, or if they refuse that vaccination or testing to be quarantined or isolated from the public. And as Mr. DeVore pointed out, um, IDPH or a local public health authority, if an individual refuses, it has to go to court and, uh, get a court order by proving by clear and convincing as evidence that there's a significant danger to the public. But importantly, nothing in that statute anywhere says anything about restricting public employers authority to establish rules for their workforce or their workplaces. And it doesn't say anything about arbitration panel authority to resolve labor disputes over an employer's decision to require certain conditions of employment, uh, in their workplaces. And that's exactly what the fourth district has twice recognized, uh, in holding that public employers in position of COVID-19 vaccination or testing requirements does not implicate the IDPH Act. So in Graham, uh, the court held that the very same vaccination or testing requirement that's at issue here, that plaintiffs are challenging, didn't implicate the court held that a vaccination or testing requirement for public school teachers also did not, uh, implicate the IDPH Act. And what both of those cases recognize is that the statute applies to IDPH's, uh, exercise of its broad authority as to the general public. And that there's nothing in the plain text of that statute that would suggest the general assembly intended these restrictions to apply when a work, when a workplace, an employer says to work for us, you should be vaccinated or tested. So plaintiffs also have offered this court no persuasive reason to depart from Graham or Allen. The brief doesn't discuss the IDPH Act's language. It doesn't explain why Graham or Allen is inconsistent with that language. Instead, they rely on a U.S. Supreme Court case, as they've done again today, that does not, contrary to Mr. DeVore's suggestion, involve the same exact issue here. That opinion addressed the OSHA, the federal OSHA agency's authority under its enabling statute to promulgate a rule requiring all employers with over 100 employees, private, public, wherever, to have a vaccination or testing requirement. It says nothing about the IDPH Act's test. It says, text, excuse me, it says nothing about a labor arbitration panel's authority to resolve labor disputes. So, and it certainly doesn't say anything about an individual employer, as in this case, IDOC, and through the arbitration process, setting rules for its own workforce. Again, that was about an agency saying all employers, you must have this vaccination or testing requirement. So the analysis in National Federation of Independent Businesses is really inapplicable here. But even if it were, I want to emphasize that the U.S. Supreme Court in that case said, well, OSHA could, it certainly could, implement a requirement that was tailored to specific, to particularly dangerous work environments where COVID was likely to spread. And they highlighted particularly crowded or cramped environments in that case. And then in Biden versus Missouri issued the same day, they declined to say a federal health and human services rule requiring vaccination or testing of how important it was to protect vulnerable individuals in that environment, and also how likely COVID is to spread in the healthcare setting. So that's exactly what we have in this case. As the arbitration panel heard in the evidence presented before it, prisons, congregate facilities like prisons and Department of Juvenile Justice facilities, they're places where COVID can and inmates. It's difficult to quarantine or isolate people from one another to prevent the spread. And so even under the rationale of National Federation of Independent Businesses, this rule would be appropriate. But again, that's about a specific agency's authority under its statute. It doesn't say anything about Illinois law or more specifically the IDPH Act on which plaintiffs base their claims. So we'd urge this court to follow the analysis of the fourth is precedent on the interpretation of the IDPH Act. So unless this court has any other questions, we'd ask that you affirm the circuit court's judgment. Justices Vaughn and Welch, any questions? No questions. No questions. Thank you. Mr. DeVore. A couple of things, gentlemen. Thank you. The federal cases, National Federation and the Missouri case that were issued the same day, the distinguishing issue in those cases for having different rulings had to do with not the National Federation, but in the Missouri case, they found that Congress had specifically delegated authority to that administrative agency to put those requirements in place. That is a threshold issue. The court found that Congress had delegated. In the National Federation, in OSHA, they found that that agency had never been delegated the authority to implement those types of things. The reason that's important and the reason it applies here, and I cited it for this court, is that if you find that it's a public health issue and not a workplace issue, then the Department of Public Health Act is going to apply because it's an issue of public health. Nowhere has this administrative agency, the Department of Corrections, ever been delegated by the legislature the ability to control public health issues. Now they talk about, well, it's a place where a lot of people meet, etc. In the Missouri case, that was not why they decided that way. They had found that it was delegated that from Congress. The fact that it's crowded, etc., is not controlling. National Federation will show that. We all know as grown adults that people could catch COVID anywhere. It was not unique to this facility, no more than walking 1,000 people through Walmart. The only thing that was unique about it is that the admin... We all know, let's call it what it is. The director of the Department of Corrections, who's appointed by the governor, had a mandate from the governor, regardless of the authority of that executive order, valid or not, and they were going to follow it and implement it. That's what happened. So again, did the Department of Corrections apply the workplace rule? No, they didn't. It's a public health issue, and the analysis should apply to show it's a public health issue, which means the Public Health Act does apply, which means the fourth got it wrong when they just concluded it was a workplace issue, without really any analysis whatsoever. And again, we're not trying to negate the interest arbitration. The case law doesn't talk about submitting the interest arbitration. The case law talks about is does the collective bargaining agreement that was approved and ratified by the individual employees, did they waive a statutory right in that contract? Otherwise, if they have not waived statutory rights, the arbitrator can only consider contractual rights. But when you turn a statutory right outside the collective bargaining agreement into an issue or a condition voluntarily through ratification of an agreement, then that's something that this court might lose jurisdiction until they've exhausted their administrative remedies in the labor category. That didn't happen in this case. There's nothing in this contract that my clients who have individual rights under Illinois law agreed through the collective bargaining of the agreement to waive. What you have here is you have asked me as their representative, took it into interest arbitration. The Barentine court is specific on this issue that says that you don't give up your statutory rights as an individual employee because the union decided to go forth on an issue like this without you having individually given it up. The only way that it can individually be given up is by the employees ratifying a bargaining agreement that waives that statutory claim. It didn't happen here. The court won't find it anywhere in this record that my clients waive through collective bargaining a new agreement that waive these rights. That is a threshold issue. For that reason, this court does have jurisdiction. For that reason, this court should find that this is a public health issue. Again, either rule on your own or send it back to the trial court and let them decide whether or not the Department of Public Health Act was violated. At least find this court has jurisdiction, find that it's a public health issue, not a workplace safety issue, and allow my clients' claims to proceed. Again, a lot of them were laid off, etc. They have damages that makes this case not moot. It's never moot of whether they had the authority when they did it, not the fact that it doesn't exist today. Thank you, gentlemen. Thank you, counsel. Questions from the justices? No questions. No other questions. Thank you. Thank you, counsel. The court will take the matter under advisement and issue its decision in due course. Thank you, justice.